THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ROGER SUTHERLAND,** | * | **CIVIL ACTION NO.:** |
| | * | **19-cv-414** |
| Plaintiff, | * | |
| | * | SECTION:    "R" (1) |
| versus | * | |
| | * | |
| | * | JUDGE:  VANCE |
| **EDISON CHOUEST OFFSHORE, INC.,** | * | |
| **OFFSHORE SERVICE VESSELS,** | * | |
| **LLC. and GALLIANO** | * | MAG. JUDGE:  VAN MEERVELD |
| **MARINE SERVICE, L.L.C.** | * | |
| Defendants. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S STATEMENT OF CONTESTED MATERIAL
FACTS PRESENTING A GENUINE ISSUE**

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, Roger Sutherland, in support of his Opposition to Defendants' Motion For Summary Judgment, submits this Statement of Contested Material Facts Presenting a Genuine Issue, addressing and responding to Defendants' material facts as numbered in Defendant's Statement of Uncontested Material Facts[1] for the reasons below.  Plaintiff also adds additional material facts pertinent to his claim.

1. At all times relevant to this lawsuit, Sutherland was employed by Galliano only.
    Contested.  There is a genuine issue of material fact whether Edison Chouest Offshore, Inc. ("Edison Chouest"), Offshore Service Vessels, LLC ("Offshore Service"), and Galliano Marine Service, LLC ("Galliano") are an integrated employer for purposes of Sutherland's ADA and ADEA claims.  Specifically, there are issues of interrelation of operations, centralized control of labor relations, common management, and common ownership.   Sutherland's employment paperwork comes from both Edison Chouest and Galliano, showing the interrelationship between these two entities.[2]  His after offer employment report, criminal record release form, change of address, duties as supervisor, request for employment verification, United States Coast Guard paperwork, and

---

[1] R. Doc. 60-1
[2] *See* Table analyzing the conflicting information provided to Plaintiff regarding Edison Chouest and Galliano and corresponding paperwork,  attached hereto as Exhibit A

evaluation forms all include a reference to Edison Chouest or were sent from an Edison Chouest employee. Not only does the paperwork overlap, but Edison Chouest and Galliano are at the same location.[3]

The centralized control of labor relations is evidenced by the uniform HR department. As the corporate director of human resources, Brett Borne is the HR director for Edison Chouest Offshore companies and is the corporate director of HR for Offshore Service.[4] Also, Gina Cheramie/Pitre is the benefits director of both Galliano and Edison Chouest Offshore Companies.[5] She refers to herself as both "Benefits Director, Edison Chouest Offshore" and "Benefits Director, Galliano Marine Services."[6]

All named Defendants are owned by the same individuals. In 2006, Edison Chouest became Offshore Service.[7] Offshore Service has common ownership with Galliano.[8] Offshore Service has the same address, same registered agent, and officers as Galliano.[9] Galliano is a family-owned company,[10] and the Chouest family makes pay and employment decisions for this company.[11] Dionne Austin serves as the registered agent and an officer for all three named defendants.[12]

2. Sutherland never filed a charge of discrimination against Offshore Service.

> Contested as an argument of counsel to the extent this statement implies that a charge of discrimination against Offshore Service was necessary for Sutherland to file a lawsuit against Offshore Service.

3. Sutherland was placed on light duty on January 10, 2018; however, Sutherland did not file suit against Galliano until January 18, 2019.

> Contested as an argument of counsel to the extent the statement implies January 10, 2018 was the only discriminatory act against Sutherland. Several other distinct discriminatory acts exist: (1) his restriction from maritime duty on March

---

[3] Deposition of Brett Borne, attached hereto as Exhibit B, p. 78:11-14
[4] *Id.* at pp. 8:24 - 9:3; 9:18-21; 54:9-13
[5] *Id.* at p. 76:11-20
[6] FMLA email and corresponding attachments sent to Plaintiff on February 6, 2018, attached hereto as Exhibit C
[7] Deposition of Dionne Chouest Austin, attached hereto as Exhibit D, p. 9:12-23; Louisiana Secretary of State business filings, attached hereto as Exhibit E
[8] Austin deposition, Exhibit D, p. 9:4-9
[9] Secretary of State filings, Exhibit E (Edison Chouest does not have the same address; however, one of the registered agents for Edison Chouest, Dionne Austin, is also the registered agent for both Offshore Service and Galliano)
[10] Austin deposition, Exhibit D, p. 8:1-3
[11] Austin deposition, Exhibit D, p. 50:2-7 (The Chouest family made the decision that Coast Guard mariners were no longer needed at Topship); Borne deposition, Exhibit B, pp. 44:25 - 45:6
[12] Secretary of State filings, Exhibit E

> 8, 2018 after being cleared by a cardiologist;[13] (2) a light duty position with a reduction in pay on March 28, 2018;[14] and (3) his removal from the schedule on September 4, 2018.[15]

4. Sutherland did not file a charge of discrimination against Galliano until March 6, 2019.
   > Contested as an argument of counsel and to the extent this assumes only a formal charge of discrimination constitues a "charge." Specifically, on December 20, 2018, Sutherland filed a "Pre-Charge Inquiry" with the EEOC against Galliano.[16] On January 15, 2019, Sutherland sent correspondence to the EEOC requesting the Galliano charge and right to sue.[17] Because the EEOC was closed at this time, due to the government shutdown, no response was received until February 20, 2019.[18] Finally, on March 6, 2019, Sutherland was able to sign a charge against Galliano.[19]

5. On his November 14, 2017 Medication Reporting Form, Sutherland reported he was taking Losartan/HCTZ and Clonidine—a medication specifically listed as "incompatible with safety-sensitive duties"—to manage his high blood pressure.
   > Not contested.

6. Because Sutherland reported taking a prohibited medication, Galliano's Medication Reporting Protocols required that Sutherland report to Family Medical Services for a medical evaluation.
   > Not contested.

7. This medical evaluation revealed Sutherland had an "abnormal EKG" and an "irregular rhythm" Sutherland was also diagnosed with "hypertension."
   > Contested to the extent the document is the best evidence of the language contained therein. Also contested in that the January 10, 2018 exam was not the date in which Sutherland was diagnosed with hypertension.[20]

8. Based on these diagnoses, Dr. Darren Duet restricted Sutherland from maritime service and referred Sutherland to undergo a "cardiac exercise stress test using the Standard

---

[13] Family Medical Services Post Incident/Tracking Record dated March 9, 2018, attached hereto as Exhibit F.
[14] Sutherland Employment Log, attached hereto as Exhibit G; Deposition of Roger Sutherland, attached hereto as Exhibit H, pp. 129:25 - 130:14 (Sutherland's pay was reduced from $675.00 to $400.00 per day)
[15] Employment Log, Exhibit G; Sutherland deposition, Exhibit H, pp. 157:13-16; 158:1-6
[16] Sutherland's Pre-Charge Inquiry against Galliano, attached to hereto as Exhibit I.
[17] Sutherland correspondence to the EEOC dated January 15, 2018, attached hereto as Exhibit J.
[18] Letter from the New Orleans EEOC Field Office dated February 20, 2018, attached hereto as Exhibit K.
[19] Sutherland's EEOC charge of discrimination against Galliano, attached hereto as Exhibit L
[20] Deposition of Dr. Darren Duet, attached hereto as Exhibit M, pp. 69:19 - 70:5

      Bruce Protocol and quantification of maximum exercise tolerance" to ensure Sutherland was medically fit for duty, pursuant to appropriate maritime fitness standards, including those established by the U.S. Coast Guard.

          Not contested.

9. A treadmill stress test, or its equivalent, is how physicians determine whether a patient has obstructive coronary artery disease.

          Not contested.

10. For the test to be considered diagnostic, and therefore medically conclusive, an individual must achieve at least eight metabolic equivalents ("METs") and reach eighty-five percent of his age-predicted maximum heart rate.

          Contested as an argument of counsel regarding the reading of the stress test and requirements of the test. Sutherland's stress test was read as non-diagnostic based on the possibility that if Sutherland had walked for longer "maybe something else would have shown up."[21] Importantly, the stress test should not be taken by itself. [22]

11. Under U.S. Coast Guard regulations, a person in Mr. Sutherland's position should withstand testing for at least seven and a half minutes.

          Contested as an argument of counsel to the extent that the regulations should have applied to Sutherland. In fact, Dr. Duet uses the U.S. Coast Guard's Merchant Mariner Medical Manual ("the Manual") and the Guidelines on the Medical Examinations of Seafarers (the "Guidelines"), which is not guided by the U.S. Coast Guard, when determining if an individual is fit for maritime service.[23] Dr. Duet selected specific portions of these standards and applied them to Sutherland although the standards are not an essential job function. The Manual states that someone with a *previous* diagnosis of coronary artery disease may require further review, not someone who *may* have coronary artery disease.[24] Sutherland did not have a previous diagnosis of coronary artery disease; therefore, applying this standard to Sutherland was not appropriate. Not only should this stress test standard not have applied to Sutherland, but this form of testing is only a

---

[21] Deposition of Dr. Steven Eilen, attached hereto as Exhibit N, p. 26:10-24
[22] *Id.* at p. 32:15-24
[23] Merchant Mariner Medical Manual, Exhibit O; Guidelines on the Medical Examinations of Seafarers, Exhibit P; Duet deposition, Exhibit M, pp. 45:7-9; 46:20-22 (Guidelines on the Medical Examinations of Seafarers is not guided by the U.S. Coast Guard.) *Id.* at 46:8-19 (Some information within these resources is overlapping, while other information is conflicting; nonetheless, both guidelines are resources for mariner fitness)
[24] Duet deposition, Exhibit M, p. 40:1-7; Merchant Mariner Medical Manual, Exhibit O, at 12-1.

      preference/recommendation according to the Manual, not a requirement.[25]  Also, the Manual states, "[g]enerally, the type and manner of evaluation data or objective testing submitted will be left to the discretion of the treating provider or specialist"[26]

12. On February 21, 2018, as instructed by Dr. Duet, Sutherland underwent a treadmill stress test using the Standard Bruce Protocol, but he was not able to complete the stress test, having ended the evaluation after only four minutes and twenty-two seconds and reaching only eighty percent of his age-predicted maximum heart rate.

      Contested as an argument of counsel, as this allegation does not give any indication as to why Sutherland "was not able to complete the stress test" or whether completing the stress test was a job requirement.  To begin, during the test, Sutherland experienced leg pain, which resulted in termination of the test.[27]  To the extent that Sutherland exercised during the stress test, he had no problems.[28]

      Next, compliance with the Merchant Mariner Medical Manual and Guidelines on the Medical Examinations of Seafarers, which Dr. Duet uses to determine if an individual is fit for maritime service, is not an essential job function according to the Master job description.[29]  However, Dr. Duet required compliance with these standards prior to releasing him to full duty.[30]  Although Dr. Eilen released Sutherland to full duty based on the stress test results, Dr. Duet maintained Sutherland's restriction from maritime service.[31]

13. Because Sutherland's heartrate never reached above eighty percent of his age-predicted maximum heart rate, the test was deemed "nondiagnostic."

      Contested as a misrepresentation of why the test was nondiagnostic.  Specifically, Dr. Eilen testified Sutherland's stress test was read as non-diagnostic based on the possibility that if Sutherland had walked for longer "maybe something else would have shown up."[32]

---

[25] Merchant Mariner Medical Manual, Exhibit O, at 12-7.
[26] *Id.* at 12-3
[27] Eilen deposition, Exhibit N, pp. 33:22 - 34:4; 36:18 - 38:8; Sutherland's Stress Test Results, attached hereto as Exhibit Q.
[28] Eilen deposition, Exhibit N, p. 32:15-24
[29] Declaration of Dr. Darren Duet, attached hereto as Exhibit R, at ¶ 4; Merchant Mariner Medical Manual, Exhibit O; Guidelines on the Medical Examinations of Seafarers, Exhibit P; Master job description, attached hereto as Exhibit S.
[30] Duet declaration, Exhibit R, at ¶ 4.
[31] Post Incident/Tracking Record dated March 9, 2018, Exhibit F; Duet declaration, Exhibit R, at ¶6.
[32] Eilen deposition, Exhibit N, p. 26:10-24

14. Following his review of the results, on March 9, 2018, Dr. Duet maintained Sutherland's restriction from maritime service and further limited him to "light duty," given that Dr. Duet was not satisfied with Sutherland's ability to safely perform the essential duties of his job and noting Sutherland's inability to meet the physical fitness standards required for mariners, as established by the U.S. Coast Guard.
    Not contested.

15. Dr. Duet found Sutherland's inability to complete the non-diagnostic stress test was significant in two respects:
    a. The test results could not rule out the potential for Sutherland's having obstructive coronary artery disease, a condition that would preclude a finding of Sutherland's being fit for duty, especially given that, as a Master Captain, Sutherland would be working in remote areas to which emergency medical personnel would not be able to timely respond; and
    b. Sutherland's exercise tolerance, as evidenced by his only going four minutes and twenty-two seconds, is insufficient exercise capacity to safely work in a medium-heavy to heavy duty job.

    Contested to the extent that Dr. Duet's interpretation of the non-diagnostic stress test is the only interpretation necessary for determining the significance of Sutherland's stress test. In fact, Sutherland's cardiologist, Dr. Eilen disagrees with Dr. Duet's analysis of the non-diagnostic stress test:
    > "[I]f you're going to decide somebody may or may not have coronary disease and you're going to restrict them, well, why not do another test and make sure that they do or don't have it. Why just restrict them on the basis of that test when, for the sake of argument, he had leg pain. It had nothing to do with his heart that kept him from being on the treadmill. I mean, why not say okay, look, Mr. Sutherland I need some more evidence. You weren't able to exercise much, why not let's see if you really have coronary disease. From my standpoint as a physician, you sit here and you go, does the test agree with the patient's symptoms? You don't interpret a test outside of anything else. It's only a test. He did a lot of heavy work that he described to me, and he had no symptoms, at least that he told me, of anything. So if somebody were -- so let's suppose that doctor came to me and said look, you know, I have to do something. This guy didn't make it on the treadmill test. I would have discussed it with him and said well, you know, what do we need to do to make this guy so he can work and that'll satisfy whatever your criteria are. Because he doesn't have chest pain, he doesn't have a positive stress test. The only hook in here is that he

> didn't follow the rules and didn't quite go as far as he could. You know, as a physician that's what I would have done."[33]

Also, Dr. Eilen noted there is not much difference between 7 and 8 METS.[34]

16. Because Dr. Duet had limited Sutherland to light duty and restricted him from maritime service, Galliano scheduled Sutherland for light-duty jobs only, and communicated to him that, until he was able to demonstrate his fitness for duty and ability to meet the U.S. Coast Guard's minimum fitness requirements, Mr. Sutherland would remain on light duty.
>> Not contested.

17. Dr. Duet never cleared Mr. Sutherland for maritime service, and based on Dr. Duet's medical opinion, Galliano could not safely schedule Mr. Sutherland for a job that required him to work offshore.
>> Not contested.

18. Because Mr. Sutherland was not fit for maritime service, he was not qualified to serve in the position of Master Captain.
>> Contested in that Dr. Duet's evaluation of Sutherland that led to the conclusion that he was not fit for maritime service was sufficient and Defendants could properly rely on this finding. In fact, Dr. Duet did not ask Sutherland if he was required to do physical demands listed within the Master job description, and instead, relied on the general job description provided to him.[35] Neither Defendants nor Dr. Duet knew if Sutherland was actually capable of performing the essential functions of the job.[36]

19. Following his placement on light duty, Sutherland was permanently replaced as Master Captain by Wesley Corkern, who was fifty-nine years old at the time.
>> Not contested.

20. At the time of his promotion to Master Captain, Sutherland was sixty-three years old.
>> Not contested.

---

[33] *Id.* at pp. 42:9-44:18
[34] *Id.* at p. 27:6-7
[35] Duet deposition, Exhibit M, pp. 63:2 - 64:8
[36] *Id.* at 64:9-14 (Dr. Duet never asked Sutherland if he was able to perform any or all of the physical demands listed within the Master job description)

## **ADDITIONAL MATERIAL FACTS TO WHICH THERE IS NOT A GENUINE ISSUE**

Plaintiff contends that the following are material facts to which there is not a genuine issue of material fact for trial:

21. Sutherland's last day of employment with Defendants was September 4, 2018.[37]

22. The domicile address of Edison Chouest Offshore, Inc. is East 118th Street, Galliano, LA, 70354. Gary Chouest and Dionne Chouest are both registered agents of Edison Chouest Offshore, Inc., and Gary Chouest and Laney Chouest are officers of Edison Chouest Offshore, Inc.[38]

23. The domicile address of Galliano Marine Service, LLC is 16201 East Main Street, Cut Off, LA 70345. Dionne Austin is the registered agent of Galliano Marine Service, LLC, and Dino Chouest and Dionne Austin are officers of Galliano Marine Service, LLC.[39]

24. The domicile address of Offshore Service Vessels, LLC is 16201 East Main Street, Cut Off, LA 70345. Dionne Austin is the registered agent of Offshore Service Vessels, LLC, and Dino Chouest and Dionne Austin are officers of Offshore Service Vessels, LLC.[40]

25. The domicile address of Family Medical Services, LLC is 16201 East Main Street, Cut Off, LA 70345. Dionne Austin is the registered agent of Offshore Service Vessels, LLC, and Dino Chouest, Dionne Austin, and Damon Chouest are officers of Offshore Service Vessels, LLC.[41]

26. In 2006, Edison Chouest Offshore, Inc. became Offshore Service Vessels, LLC.[42]

27. Dr. Eilen released Sutherland to full duty with no restrictions on March 8, 2018.[43]

---

[37] Sutherland deposition, Exhibit H, pp. 157:13-16; 158:1-6
[38] Secretary of State filings, Exhibit E
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] Austin deposition, Exhibit D, p. 9:12-23; Secretary of State filings, Exhibit E
[43] Sutherland Return to Work Order, attached hereto as Exhibit T

        Respectfully submitted,

SANGISETTY LAW FIRM

_s/ *Whitney Wilson*_
**WHITNEY WILSON (#38447)**
**RAVI SANGISETTY (#30709)**
3914 Canal Street
New Orleans, LA 70119
Telephone:   (504) 662-1016
Facsimile:    (504) 662-1318
whitney@sangiettylaw.com
rks@sangisettylaw.com